UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KHADIJAH TOWNSEND, | ) | |
| ADMINISTRATOR OF THE ESTATE | ) | |
| OF RICHARD TOWNSEND, | ) | Civil Action No. |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| WEXFORD HEALTH SOURCES, INC., | ) | |
| JAMES MINSHULL, M.D., JEFFREY | ) | |
| HOUK, REBECCA WATTERSON, | ) | |
| BUTLER COUNTY, WILLIAM L. | ) | |
| MCCARRIER, A. DALE PINKERTON, | ) | |
| JAMES ECKSTEIN, RICHARD | ) | |
| SHAFFER, MARK BISHOP | ) | |
| AND JOHN STOJKA | ) | |
| | ) | |
| Defendants. | ) | JURY TRIAL DEMANDED |

## **COMPLAINT**

AND NOW, comes the Plaintiff, Khadijah Townsend, by and through her attorneys and files the within Complaint:

## **Jurisdiction**

1.    This Honorable Court has jurisdiction over this matter pursuant to 28 U.S.C. §1331.

2.    Venue is proper in this District pursuant to 28 U.S.C. §1391(b)(2) as Plaintiff is a resident of this District and the events giving rise to the matters in controversy occurred within the District.

## **Parties**

3.      Plaintiff, Khadijah Townsend, (referred to as "Khadijah"), is an adult individual who resides in Allegheny County, Pennsylvania.  Khadijah is the administrator of the Estate of Richard Townsend.

4.      Defendant, Wexford Health Sources, Inc. (referred to as "WHS") is a Pennsylvania corporation with a principal address at 501 Holiday Drive, Foster Plaza Four, Pittsburgh, Allegheny County, Pennsylvania  15220.

5.      WHS is a licensed medical professional.  Plaintiff is asserting a professional liability claim against this defendant.

6.      Defendant, James Minshull, M.D. (referred to as "Dr. Minshull") is a physician licensed to practice medicine in Pennsylvania and regularly conducts business at 1 Hospital Way, Butler County, Pennsylvania 16001.

7.      Dr. Minshull is a licensed medical professional.  Plaintiff is asserting a professional liability claim against this defendant.

8.      Defendant, Jeffrey Houk (referred to as "Houk"), is a physician assistant licensed in Pennsylvania and regularly conducts business at 202 South Washington Street, Butler, Butler County, Pennsylvania  16003.

9.      Houk is a licensed medical professional.  Plaintiff is asserting a professional liability claim against this defendant.

10.     Defendant, Rebecca Watterson (referred to as "Watterson"), is a registered nurse licensed in Pennsylvania and regularly conducts business at 202 South Washington Street, Butler, Butler County, Pennsylvania  16003.

11.     Watterson is a licensed medical professional.  Plaintiff is asserting a professional liability claim against this defendant.

12.     Defendant, Butler County, is a county government organized in Pennsylvania with an official address located at 124 West Diamond Street, Butler, Butler County, Pennsylvania  16003.

13.     Defendants, William L. McCarrier, A. Dale Pinkerton and James Eckstein (referred to collectively as "Commissioners"), were the duly elected Commissioners of Butler County in March, 2015.

14.     Defendant, Richard Shaffer (referred to as "Warden Shaffer") was the Warden of the Butler County Prison in March, 2015.

15.     Defendant, Mark Bishop (referred to as "Sargent Bishop") was a correctional officer at the Butler County Prison in March, 2015.

16.     Defendant, John Stojka (referred to as "CO Stojka") was a corrections officer at the Butler County Prison in March, 2015.

### Facts

17.     On and before March 14, 2015, Butler County operated a county prison known as the Butler County Prison.

18.     On and before March 14, 2015, Butler County contracted with WHS to provide medical care to inmates of the Butler County Prison.

19.     The contract between Butler County and WHS requires that a medical director be present at the prison at least 3 hours per week.

20.     On and before March 14, 2015, Dr. Minshull was the medical director at the prison.

21.     According to WHS policy, the medical director is responsible for making and reviewing all medical and clinical decisions at the prison.

22.     On and before March 14, 2015, Dr. Minshull was the agent, servant and/or employee of WHS.

23.     On and before March 14, 2015, Houk was an agent, servant and/or employee of WHS.

24.     On and before March 14, 2015, Dr. Minshull was the supervising physician of Houk.

25.     On and before March 14, 2015, Watterson was an agent, servant and/or employee of WHS.

26.     Watterson was the Health Services Administrator ("HSA") at the prison.

27.     According to WHS policy, the HSA is responsible for managing the overall health care delivery system, monitoring all health service contract activity, and making a staffing plan at the prison.

28.     On November 6, 2014, Richard Townsend (referred to as "Richard") was an inmate at the Butler County Prison.

29.     On March 14, 2015, Richard was sent to the hospital by Houk because of symptoms related to Richard hitting his head on a metal pole at the prison.

30.     A CT scan at the hospital on March 14, 2015 was interpreted as normal.

31.     The physician at the hospital diagnosed Richard with altered mental status.  The physician's differential diagnosis was intracranial injury.

32.     On March 14, 2015, the physician at the hospital discharged Richard back to the prison with orders that Richard follow-up with the prison physician tomorrow (March 15, 2015) for re-evaluation and further treatment.

33.     On March 15, 2015 at 7:30 a.m., CO Stojka reported to a nurse at WHS that Richard had an unsteady gait while picking up his breakfast tray.

34.     The nurse at WHS instructed CO Stojka to keep an eye on Richard.

35.     On March 15, 2015 at 11:00 a.m., Richard was placed in the medical unit at the prison by a nurse at WHS.  At that time, Richard was unsteady on his feet and suffered from a severe headache.

36.     On March 15, 2015 at 11:00 a.m., Houk ordered Motrin, 600 mg.

37.     On March 15, 2015 at 6:30 p.m., Houk ordered Motrin, 800 mg.

38.     Neither Houk nor any other physician saw Richard on March 15, 2015.

39.     On March 16, 2015 at 12:00 p.m., a nurse at WHS noted blood coming from Richard's left ear.

40.     On March 16, 2015 at 2:00 p.m., a nurse at WHS noted that Richard continued to suffer from a headache and a few episodes of blurred vision.

41.     Neither Houk nor any other physician saw Richard on March 16, 2015.

42.     On March 17, 2015 at 7:30 p.m., a nurse at WHS noted that Richard stated "we are not doing anything to help him."

43.     On March 17, 2015 at 10:00 p.m., a nurse at WHS noted that Richard was found laying on the floor and was feeling dizzy.  The WHS nurse also noted that Richard was sweating and his skin was damp and cool to touch.  The WHS nurse instructed Richard to stay in his bunk.

44.     On March 17, 2015 at 10:15 p.m., a nurse at WHS noted that Richard stated that he was "not faking this, seriously feels like something is wrong."  The WHS nurse did not provide any medical care to Richard at that time.

45.     Neither Houk nor any other physician saw Richard on March 17, 2015.

46.     On March 18, 2015, Houk noted that Richard's labs showed that his Prothombin Time (PT) was 33.4 and noted as high.  Houk also noted that Richard's INR was 2.97 and noted as high.

47.     On and before March 18, 2015, Richard was prescribed Coumadin for a mechanical valve replacement.

48.     The Coumadin prescription required regular monitoring of Richard's blood clotting time (PT/INR).

49.     On March 18, 2015 Houk ordered Tylenol 1000 mg.

50.     On March 18, 2015, Houk ordered no NSAIDS.

51.     On March 18, 2015, Houk performed a physical exam of Richard.

52.     The time of the exam is not noted in the chart.

53.     On exam by Houk, Richard reported that he continued to have trouble with coordination, had left sided weakness, headaches and sweats.  Houk noted that Richard had a bruise on his orbital area.  Houk also noted that the strength in Richard's left hand was 1 out of 4, whereas the strength in his right hand was 4 out of 4.  Houk also noted that the strength in Richard's left leg was 2 out of 4, whereas the strength in his right leg was 4 out of 4.

54.     On March 19, 2015 at 10:30 a.m., a nurse at WHS noted that Richard had purple ecchymosis (bruising) under his left eye and across the bottom of his eye socket.  The WHS nurse also noted that Richard continued to complain of a headache.

55.     On March 19, 2015 at 4:15 p.m., a nurse at WHS noted that Richard continued to complain of a headache and that the medical staff was not doing anything to help him.

56.     On March 19, 2015, Richard was moved from the medical unit of the prison to a regular inmate pod.

57.     On March 19, 2015, Richard informed a corrections officer at the prison that medical would not take care of his headaches.

58.     On March 19, 2015, Richard began beating his chest and stated that he would continue to behave like this until he received medical attention.

59.     Neither Houk nor any other physician saw Richard on March 19, 2015.

60.     On March 20, 2015 at 9:15 p.m., Richard completed a sick call form.  At that time, Richard complained of a "real bad" headache.

61.     Neither Houk nor any other physician saw Richard on March 20, 2015.

62.     Neither Houk nor any other physician saw Richard on March 21, 2015.

63.     Richard's sick call request was not addressed by anyone at the prison until March 22, 2015.

64.     On March 22, 2015, a nurse at WHS noted that Richard complained of an ongoing headache and throbbing head.  The WHS nurse noted that the headache was in the right eye brow and radiated into the back of his neck.  The nurse noted that Richard was diaphoretic (sweating) and that his pupils were slight to non-reactive.

65.     Slight to non-reactive pupils is a sign of a brain injury and a brain bleed.

66.     On March 22, 2015 at 2:10 p.m., Houk ordered Mylanta for Richard.

67.     Neither Houk nor any other physician saw Richard on March 22, 2015.

68.     Neither Houk nor any other physician saw Richard on March 23, 2015.

69.     On March 24, 2015 at 9:15 p.m., a nurse at WHS noted that Richard was pale in color, felt weak and dizzy and continued to have a headache.  The WHS nurse instructed Richard to increase his fluids.

70.     Neither Houk nor any other physician saw Richard on March 24, 2015.

70.     On March 25, 2015 at approximately 3:30 a.m., Richard was moaning and complaining of a very bad headache.

71.     On March 25, 2015 at approximately 3:30 a.m., Richard and/or his cellmate, hit the emergency intercom and spoke with C.O. Stojka.  C.O. Stojka advised Richard that medical staff was not available and that he would have to wait to see medical staff.

72.     Richard's pain and condition was so severe that several inmates heard Richard moaning and begging for help.

73.     On March 25, 2015 at 4:12 a.m., C.O. Stojka observed Richard sitting on the bottom bunk in his cell with a blanket over his head.  C.O. Stojka noted that Richard advised that he had a really bad headache.  C.O. Stojka noted that Richard was moaning and complaining of pain.

74.     C.O. Stojka was advised by Sargent Bishop to tell Richard that medical would see him in the morning.

75.     At that time, neither C.O. Stojka nor Sargent Bishop provided any medical care to Richard.

76.     At that time, neither C.O. Stojka nor Sargent Bishop requested any medical care be provided to Richard.

77.     On March 25, 2015 at approximately 6:10 a.m., Richard was brought to the medical department at the prison.

78.     At that time, a nurse at WHS noted that Richard had head pain, blurred vision and had been up all night with a headache.

79.     On March 25, 2015 at approximately 9:00 a.m., Watterson noted that Richard was in his cell, lying on the floor with a blanket under his head.  Watterson moved Richard to his cot. Watterson noted that Richard was sweating.  Watterson decided at that time to monitor Richard.

80.     On March 25, 2015 at approximately 9:30 a.m., Watterson noted that Richard was in his cell with no pants on and was flailing his arms.  Watterson ordered an ambulance to take Richard to the hospital.

81.     Neither Houk nor any other physician at the prison saw Richard on March 25, 2015.

82.     Richard was transported by ambulance to the hospital.  At that time, it was determined that Richard was unresponsive and in severe distress.

83.     A CT scan indicated that Richard's brain was hemorrhaging and was herniated extensively.

84.     Richard was diagnosed with a subdural hematoma and was transferred to a trauma hospital in Pittsburgh.

85.     At the trauma hospital, Richard underwent brain surgery in an attempt to relieve the bleeding and pressure on his brain.

86.     Richard was pronounced brain dead at 1:04 p.m. on March 26, 2015.

87.     An autopsy was performed and listed the cause of death as acute and chronic subdural hemorrhage.

88.     Richard's death was preventable and caused by the conduct of Defendants.

89.     As a result of the death of Richard, Plaintiff, Khadijah, claims all appropriate damages under the Survival Act, 42 Pa.C.S.A. §8302 on behalf of the Estate and the Wrongful Death Act, 42 Pa.C.S.A. §8301 on behalf of all wrongful death heirs.

## Count I – Negligence
## Plaintiff v. WHS

90.     Each of the above paragraphs are incorporated by reference.

91.     WHS acted through their agents, servants and employees, including but not limited to Dr. Minshull, Houk and Watterson.

92.     Richard's death was caused by the negligence of WHS in the following particulars:

a.      In failing to recognize the signs and symptoms of Richard's brain injury;

b.      In failing to transfer Richard to the hospital before March 25, 2015 at 9:30 a.m.;

c.      In failing to follow the instructions given by the physician at the hospital on March 14, 2015 that Richard should be seen by a physician within 24 hours;

d.      In failing to perform an adequate and thorough physical examination;

e.      In failing to communicate with the supervising physician regarding Richard's condition;

f.      In failing to supervise Houk;

g.      In failing to monitor Richard's PT/INR levels;

h.      In failing to communicate with each other regarding Richard's condition and ongoing headaches;

i.      In failing to perform an adequate and thorough neurological examination;

j.      In failing to properly document Richard's condition in the medical records;

k.      In failing to establish, enforce and monitor policies, procedures and protocols regarding patients with headaches;

l.      In failing to establish, enforce and monitor policies, procedures and protocols regarding patients in need of emergency medical care;

m.      In failing to establish, enforce and monitor policies, procedures and protocols regarding patients on Coumadin and/or anticoagulants;

n.      In failing to require Dr. Minshull to be present at least 3 hours per week, as required in the contract with Butler County;

o.      In failing to require Dr. Minshull to supervise Houk;

q.      In failing to supervise Dr. Minshull;

r.      In failing to supervise Houk;

s.      In substituting Houk for Dr. Minshull as the medical director;

t.      In failing to adequately train Houk;

u.      In failing to adequately train Watterson;

v.      In failing to adequately train nurses at the prison;

w.      In failing to monitor the delivery of medical care at the prison;

x.      In permitting Houk and/or Watterson to make and/or review all clinical decisions rather than Dr. Minshull;

y.      In failing to establish, enforce and monitor policies, procedures and protocols regarding the communication of inmates' medical conditions with prison personnel, including correctional officers;

z.      In failing to staff the medical department with medical personnel 24 hours per day;

aa.     In permitting and/or requiring non-medical personnel, including corrections officers, to monitor inmates in the medical department; and

bb.     In failing to perform an annual assessment and/or report of the health care delivery system, as required by the contract with Butler County and WHS's own internal policies and procedures.

WHEREFORE, Plaintiff requests judgment in her favor and against WHS in an amount in excess of the jurisdictional limit, plus interest and costs.

**JURY TRIAL DEMANDED.**

## Count II – Negligence

**Plaintiff v. Dr. Minshull**

93.     Each of the above paragraphs are incorporated by reference.

94.     Richard's death was caused by the negligence of Dr. Minshull in the following

particulars:

        a.     In failing to adhere to the agreement with WHS;

        b.     In failing to be responsible for making and reviewing all medical/clinical decisions at the prison, including the medical and clinical decisions regarding Richard;

        c.     In failing to supervise Houk;

        d.     In failing to review the medical records of Houk;

        e.     In violating 49 Pa. Code §18.153;

        f.     In violating 49 Pa. Code §18.122; and

        g.     In violating 49 Pa. Code §18.144 .

95.     As the supervising physician of Houk, Dr. Minshull accepts full professional and

legal responsibility for Houk, 49 Pa. Code §18.144(7).

WHEREFORE, Plaintiff requests judgment in her favor and against Dr. Minshull in an

amount in excess of the jurisdictional limit, plus interest and costs.

**JURY TRIAL DEMANDED.**

**Count III – Negligence**
**Plaintiff v. Houk**

96.     Each of the above paragraphs are incorporated by reference.

97.     Richard's death was caused by the negligence of Houk in the following

particulars:

        a.     In failing to properly diagnose and treat Richard's brain injury;

b.      In failing to properly document an admission history and physical exam that could be followed logically by other providers;

c.      In failing to take an adequate and thorough history regarding Richard's severe headache;

d.      In failing to perform and/or document a complete neurological and mental examination;

e.      In misdiagnosing Richard with an infection and prescribing antibiotics;

f.      In failing to reassess Richard;

g.      In failing to establish a proper plan for treatment of Richard's condition;

h.      In examining Richard only one time, March 18, 2015, following his discharge from the hospital on March 14, 2015;

i.      In failing to communicate with Dr. Minshull;

j.      In failing to communicate with the nursing staff about Richard's condition and response to treatment;

k.      In violating 49 Pa. Code §18.153;

l.      In violating 49 Pa. Code §18.122;

m.      In failing to order appropriate studies for a workup of acute unilateral weakness, confusion, vertigo, bruising, bleeding from the ear spontaneously, gait disturbances and severe headache;

n.      In failing to order a lumbar puncture;

o.      In failing to order blood cultures;

p.      In failing to order repeat CT scan;

q.      In failing to order INR or CBC and electrolytes;

r.      In failing to closely monitor and prescribe Coumadin;

s.      In failing to consult with the supervising physician;

t.      In failing to direct the nursing staff with regard to appropriate headache or post concussion medical observation of Richard;

u.      In failing to follow-up on his acutely ill patient;

v.      In failing to provide a logical differential diagnosis and treatment of Richard's acute left sided weakness and continued complaints of severe headache;

w.      In failing to follow WHS policies, procedures and/or protocols regarding treatment of patients with headaches;

x.      In failing to follow WHS policies, procedures and/or protocols regarding appropriate medical documentation;

y.      In prescribing Mylanta; and

z.      In failing to recognize and appreciate the exam findings of left sided weakness, bruising in the orbital area, sweating, trouble with coordination and headache.

WHEREFORE, Plaintiff requests judgment in her favor and against Houk in an amount in excess of the jurisdictional limit, plus interest and costs.

**JURY TRIAL DEMANDED.**

<u>**Count IV-Negligence**</u>
<u>**Plaintiff v. Watterson**</u>

98.     Each of the above paragraphs are incorporated by reference.

99.     Richard's death was caused by the negligence of Watterson in the following particulars:

a.      In failing to supervise the nursing staff at the prison;

b.      In failing to adequately staff the medical department at the prison;

c.      In failing to monitor all health service activity;

d.      In failing to ensure that Richard was seen by a physician within 24 hours of discharge from the hospital on March 14, 2015;

e.      In failing to train the nursing staff at the prison;

f.      In failing to consult a physician on March 25, 2015;

g.    In failing to recognize immediately on March 25, 2015 that Richard was gravely ill and required immediate emergency medical attention;

h.    In deciding to "monitor" Richard on March 25, 2015; and

i.    In failing to review and/or be aware of Richard's condition from March 15, 2015 through March 25, 2015.

WHEREFORE, Plaintiff requests judgment in her favor and against Watterson in an amount in excess of the jurisdictional limits, plus interest and costs.

**JURY TRIAL DEMANDED.**

### Count V – Violation of Civil Rights – 42 U.S.C. §1983
### Plaintiff v. WHS

100.    Each of the above paragraphs are incorporated by reference.

101.    WHS deprived Richard of the rights guaranteed to him by 42 U.S.C. §1983 and by the Eighth and Fourteenth Amendments to the United States Constitution.

102.    WHS's practice and/or policy of violating the contract with Butler County that required the medical director be present at least 3 hours per week resulted in Richard being deprived of his right to adequate medical care.

103.    WHS's practice and/or policy of permitting Houk and Dr. Minshull to violate Pennsylvania law regarding a physician's responsibility to supervise physician assistants resulted in Richard being deprived of his right to adequate medical care.

104.    WHS's practice and/or policy of not training and/or supervising the medical personnel, including Dr. Minshull, Houk, Watterson and nurses at the prison resulted in Richard being deprived of his right to adequate medical care.

105.     WHS's practice and/or policy of not monitoring and/or assessing the delivery of healthcare within the prison resulted in Richard being deprived of his right to adequate medical care.

106.     In addition to the above, WHS was deliberately indifferent to Richard's serious medical need in the following particulars:

      a.      In denying Richard access to a physician capable of evaluating the need for treatment of a serious medical need;

      b.      In failing to adequately staff the medical department;

      c.      In failing to have medical staff present 24 hours per day; and

      d.      In failing to follow their own policies, procedures and protocols with regard to delivery of adequate medical care to inmates at the prison.

107.     WHS's deliberate indifference to Richard's serious medical need was willful, wanton and in reckless disregard to the rights of others, including Richard's.

WHEREFORE, Plaintiff requests judgment in her favor and against WHS in an amount in excess of the jurisdictional limit, plus interest and costs, plus punitive damages.

**JURY TRIAL DEMANDED.**

## <u>Count VI - Violation of Civil Rights – 42 U.S.C. §1983</u><br><u>Plaintiff v. Houk</u>

108.     Each of the above paragraphs are incorporated by reference.

109.     Houk's conduct was deliberately indifferent to Richard's serious medical need and as a result, Richard was deprived of the rights guaranteed to him by 42 U.S.C. §1983 and by the Eighth and Fourteenth Amendments to the United States Constitution.

110.     Houk's deliberate indifference to Richard's serious medical need was willful, wanton and in reckless disregard to the rights of others, including Richard's.

WHEREFORE, Plaintiff requests judgment in her favor and against Houk in an amount in excess of the jurisdictional limit, plus interest and costs, plus punitive damages.

**JURY TRIAL DEMANDED.**

### Count VII - Violation of Civil Rights – 42 U.S.C. §1983
### Plaintiff v. Butler County

111.    Each of the above paragraphs are incorporated by reference.

112.    Butler County deprived Richard of the rights guaranteed to him by 42 U.S.C.§1983 and by the Eighth and Fourteenth Amendments to the United States Constitution.

113.    Butler County adopted a policy, practice and/or custom of choosing to violate and/or ignore their own policy and Pennsylvania law that required Butler County to receive and review annual reports regarding the health care system and confirm that adequate health care is being provided to inmates.

114.    Butler County adopted a policy, practice and/or custom of not staffing the prison with medical personnel 24 hours per day, despite being advised and/or knowing that medical care was necessary 24 hours per day in order to provide adequate health care to inmates.

115.    Butler County adopted a policy, practice and/or custom of permitting WHS to violate the contract that required a medical director to be present at the prison at least 3 hours per week.

116.    Butler County adopted a policy, practice and/or custom of moving inmates that required 24 hour medical observation to be moved from the medical area of the prison to processing and/or general population, which resulted in inmates not receiving adequate medical care at the prison.

WHEREFORE, Plaintiff requests judgment in her favor and against Butler County in an amount in excess of the jurisdictional limit, plus interest and costs.

**JURY TRIAL DEMANDED.**

<u>**Count VIII - Violation of Civil Rights – 42 U.S.C. §1983**</u>
<u>**Plaintiff v. Commissioners**</u>

117.    Each of the above paragraphs are incorporated by reference.

118.    The Commissioners are policymakers responsible for formulating, adopting,

enforcing, monitoring and funding policies and procedures at the prison and at all times acted in

their official capacity.

119.    The Commissioners were deliberately indifferent to the policies, practices, and/or

customs that resulted in Richard being denied adequate medical care at the prison, including the

following:

        a.    WHS violating the contract;

        b.    No annual reviews of the delivery of medical care at the prison; and

        c.    Knowing of a need for 24 hour medical care, but refusing to provide funds
           to staff the medical department 24 hours per day.

WHEREFORE, Plaintiff requests judgment in her favor and against Commissioners in an

amount in excess of the jurisdictional limit, plus interest and costs.

**JURY TRIAL DEMANDED.**

<u>**Count IX - Violation of Civil Rights – 42 U.S.C. §1983**</u>
<u>**Plaintiff v. Warden Shaffer**</u>

120.    Each of the above paragraphs are incorporated by reference.

121.    Warden Shaffer was a policymaker responsible for formulating, adopting,

enforcing and monitoring policies and procedures at the prison and at all times acted in his

official capacity.

122.    Warden Shaffer was deliberately indifferent to the policies, practices, and/or customs that resulted in Richard being denied adequate medical care at the prison, including the following:

        a.    WHS violating the contract;

        b.    No annual reviews of the delivery of medical care at the prison;

        c.    Knowing of a need for 24 hour medical care at the prison, but failing to staff the medical department 24 hours per day;

        d.    Corrections Officers  providing "medical" care and/or observation in place of medically trained personnel; and

        f.    Inmates, including Richard, being denied access to a physician capable of diagnosing and treating a serious medical need.

WHEREFORE, Plaintiff requests judgment in her favor and against Warden Shaffer in an amount in excess of the jurisdictional limit, plus interest and costs.

**JURY TRIAL DEMANDED.**

<u>**Count X - Violation of Civil Rights – 42 U.S.C. §1983**</u>
<u>**Plaintiff v. Sargent Bishop**</u>

123.    Each of the above paragraphs are incorporated by reference.

124.    Sargent Bishop's conduct was deliberately indifferent to Richard's serious medical need and as a result, Richard was deprived of the rights guaranteed to him by 42 U.S.C. §1983 and by the Eighth and Fourteenth Amendments to the United States Constitution.

125.    At all times, Sargent Bishop acted in his official capacity.

126.    Sargent Bishop's deliberate indifference to Richard's serious medical need was willful, wanton and in reckless disregard to the rights of others, including Richard's.

WHEREFORE, Plaintiff requests judgment in her favor and against Sargent Bishop in an amount in excess of the jurisdictional limit, plus interest and costs.

**JURY TRIAL DEMANDED.**

**Count XI - Violation of Civil Rights – 42 U.S.C. §1983**
**Plaintiff v. CO Stojka**

127.     Each of the above paragraphs are incorporated by reference.

128.     CO Stojka's conduct was deliberately indifferent to Richard's serious medical need and as a result, Richard was deprived of the rights guaranteed to him by 42 U.S.C. §1983 and by the Eighth and Fourteenth Amendments to the United States Constitution.

129.     At all times, CO Stojka acted in his official capacity.

128.     CO Stojka's deliberate indifference to Richard's serious medical need was willful, wanton and in reckless disregard to the rights of others, including Richard's.

WHEREFORE, Plaintiff requests judgment in her favor and against CO Stojka in an amount in excess of the jurisdictional limit, plus interest and costs.

**JURY TRIAL DEMANDED.**

Respectfully submitted,

/s/ Joshua P. Geist
Joshua P. Geist
Attorney for Plaintiff

Pa.I.D. #85745
Goodrich & Geist, P.C.
3634 California Avenue
Pittsburgh, PA  15212
412-766-1455
412-766-0300 (fax)
josh@goodrichandgeist.com


 /s/  Douglas J. Olcott
Douglas J. Olcott
Attorney for Plaintiff

Pa.I.D. #204851
Dallas W. Hartman, P.C.

201 Green Ridge Drive
New Castle, PA  16105
(724) 652-4081
(724) 652-8380 (fax)
dolcott@dallashartman.com